DANIEL B. WATERMAN

v.

CHICAGO & IOWA RAILROAD COMPANY.

*Corporations—Right of Officer to Salary—De Jure and De Facto Officers.*

Where an officer of a corporation seeks to recover therefrom for salary he must show his right so to do by proving that he was an officer *de jure.* It is not sufficient to show that he was an officer *de facto.*

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Kane County; the Hon. C. W. UPTON, Judge, presiding.

Mr. CHARLES WHEATON, for appellant.

There being an acting *de facto* corporation, its existence and the authority of its acting officers can only be questioned by a proceeding by *quo warranto.* Marsh v. Astoria Lodge, 27 Ill. 421; President and Trustees v. Thompson, 20 Ill. 197; Coles County v. Allison, 23 Ill. 437; Tisdale v. President and Trustees of Minonk, 46 Ill. 9; Kettering v. Jacksonville, 50 Ill. 39; Mitchell et al. v. Deeds, 49 Ill. 416; Town of Geneva v. Cole, 60 Ill. 397; Lawson et al. v. Kolberson et al., 61 Ill. 405; Trumbo v. The People, 75 Ill. 562; The People v. Newberry's Estate, 87 Ill. 41; Alderman v. School Directors, 91 Ill. 179; Osborn v. The People, 103 Ill. 224.

The principle of all these cases is that the corporations were not void because they were illegally formed, but only voidable by *quo warranto,* and that the same principle extends to and embraces the officers of the corporations who have been illegally elected.

Again, it is not sufficient for the court to decide against the title of a defendant in a *quo warranto* information, but a judgment of unconditional ouster from office must be entered of record before he will be deprived of the authority of his office. Mining Co. v. Anglo Cal. Bank, 104 U. S. 192.

Mr. M. D. HATHAWAY, for appellee.

The right to the salary and emoluments of a public officer attaches to the true and not to the mere colorable title. In an action brought by an officer for salary or compensation, his title to the office is in issue, and if that is defective and another has the actual right to the office, although not in possession, the plaintiff can not recover. The People ex rel. v. Weber, 86 Ill. 283; The People ex rel. v. Weber, 89 Ill. 347; Dolan (appellant) v. The Mayor, 68 N. Y. 277; Matthews v. Supervisors, 53 Miss. 715; McVerey v. Mayor, 80 N. Y. 185; Mayfield v. Moore, 53 Ill. 428; The People v. Tieman, 30 Barb. 193 ; Memphis v. Woodard, 27 Am. Rep. 754, note ; U. S. ex rel. v. Addison, 22 Howard, 174; State of Nevada ex rel. J. C. Corey v. Curtis, 9 Nev. 325; also reported in Am. Corp. Cases, Vol. 5, page 509.

LACEY, J.  This suit was commenced in the Circuit Court by the appellant against the appellee in an action of assumpsit, on alleged cause of action, for salary as president of the appellee, from March 4, 1880, to March 15, 1882, at the rate of $5,000 per year, as fixed by resolution by a pretended board of directors of said appellee, at a meeting of the board May 28, 1880, which resolution was entered of record. It is claimed that the plaintiff continued in such office in discharge of his duties till his successor was elected, March 15, 1882. It is also especially claimed that he was entitled to recover for such salary from the date on which the amount was fixed by the board of directors.

Upon the legal effect to be given to certain evidence hinges the decision of this case. The defense interposed is that the election of directors of March 3d, and the appointment of Kretzinger on March 4, 1880, was illegal, and that the resolution fixing the salary of appellant as president being by an illegally constituted board, was void.

It is claimed by the appellee that the appellant was not a president of the appellee *de jure*, but at best only *de facto*, and that under the law he has no right to recover in this case for such salary. It appears from the evidence that in April,

1880, a proceeding was commenced in the Criminal Court of Cook County, in the nature of a *quo warranto*, against Montony, Rising, Allen, Miller, Brady, Waterman, being the appellant, and Kretzinger, who was claiming to be director by appointment, to oust them from their usurped office. On a trial of this proceeding the court entered a decree of ouster against all the above named directors, and each of them, "and from exercising any privilege, function and franchise of the office of directors, under the election for directors of said company, alleged to have been held on the first Wednesday of March, 1880, but (the order continued) this judgment does not in any manner affect the rights of defendants acquired under the election for directors in March, 1879." It appears that Waterman, Rising, Montony and Kretzinger were the legal directors of 1879.

This illegally constituted board of directors it was that passed the resolution fixing the appellant's salary, and by reason of which he claims the right to recover in this case. He was elected president of the board by it, and has no right to recover, except by virtue of the acts of such pretended board. The point is made by appellee, that where an officer of a corporation like this seeks to recover he must show his right so to do, by proving that he was an officer of the corporation *de jure*, and that it is not sufficient to show that he was an officer *de facto*.

We can but give full assent to this claim. That such is the law is well settled in this State. In People et al. v. Weber, 86 Ill. 283, it was held, that "when one claims rights as an officer, by virtue of his office, he must show that he is legally entitled to act; that he is an officer *de jure* as well as *de facto*. * * * The acts of a *de facto* officer are valid only so far as the rights of the public or third parties having an interest in such acts are concerned." The title to an office may be inquired into in a collateral way when the officer is suing an intruder into an office for money had and received by him. See, also, People et al. v. Weber, 89 Ill. 347; Mayfield v. Moore, 53 Ill. 428; Dolan v. The Mayor, 68 N. Y. 277. Many other cases might be cited but it is deemed unnecessary.

There are many cases cited by counsel, the object of which is, as near as we can understand from the long brief, to show that unless there is a judgment of ouster in a *quo warranto* proceeding, a *de jure* right to the office will be presumed, from the fact that an election has been declared in accordance with the forms of law. We can not doubt that, in some cases, there might be a *prima facie* case, and probably under certain circumstances a conclusive case of a *de jure* right, made out by presumption from certain evidence. In a case where there was an election of an officer declared, and the statute required a contest to be conducted in a certain time and manner, and the contesting party failed to follow the provisions of the law, the title to office in the incumbent might be regarded as valid, and he holding the title *de jure*, and it might not be allowable to show that he did not in fact have the requisite number of votes, or that there was fraud that would make the election invalid.

But in many cases the fact may be shown that the title of the incumbent is not valid and legal without resort to *quo warranto* proceedings. As in the case of Matthews v. Supervisors, 53 Miss. 715, where a sheriff, who was a defaulter as to public money by him received during a former term of office, which he had never up to that time paid, had sued the county for his official jail fees, it was held that, as the constitution made him ineligible in such case, he was not a *de jure* officer, and could not recover, and this where there had been no ouster by *quo warranto*.

The court say that "it seems to us self-evident, that where a public officer propounds against a State, county or city a claim for compensation for official services, it puts his title to the office in issue and must stand or fall by the result of that inquiry." That this is the correct rule is manifest by reference to the two cases of People v. Weber, 86 Ill. 283, and the same reported in 89 Ill. 347.

In the first case above cited, the validity of the appointment was inquired into in a suit by *mandamus*, instituted against the county elector, to compel him to pay over to the relator as city treasurer certain moneys belonging to the city. This it

was held put the *de jure* title directly in issue. It is not worth while here to speculate as to the question, in what cases certain proof might be held sufficient to establish a *de jure* title, for that would depend on the facts of each particular case, and might be as variant as the cases; but the law remains the same, that the legal title to the office in a case like the one at bar is always in issue.

In this case it was charged that certain stock of the town of Aurora, the legal voting upon which the validity of the election of directors of March 3, 1880, depended, was voted by Rising illegally and without authority from the town, he simply assuming to act by virtue of being supervisor alone. If this was the case, and we are inclined to think it was, it required no judgment of ouster in *quo warranto* to defeat the appellant's recovery. The judgment of ouster is one means of proving a want of legal title, but it is by no means the only one; though, if properly rendered with full jurisdiction of the court, it would be conclusive proof.

It is insisted by counsel for the appellant that the supposed judgment of ouster does not in fact oust any of the directors claiming title under the election of March 3, 1880. We can not agree with him. It ousts all of them as against any title claimed under that election, from which all claimed their title, and the saving clause in the judgment as to those holding over under the election of 1879 (four of them claiming to so hold over, or who might so claim), did not apply to the three new ones, who claimed no title other than from the last election. The judgment of ouster as to those was intended to be and was complete. That rendered the appointment of the appellant to the office of president by this illegal board null, as far as his claim to hold the office *de jure* is concerned—as also the resolution fixing his salary at $5,000 per annum. There is another point made against the recovery of the salary, and that is that the road went into the hands of the receiver soon after the alleged appointment of the appellant as president, and so remained till after his successor was elected and qualified, and it is insisted that the functions of appellant as president were suspended, and during such time

he could recover no salary. As we think the first point is conclusive we do not deem it necessary to pass on this question. Seeing no error in the record the judgment of the court below, finding against the claim of the appellant, is affirmed.

*Judgment affirmed.*

Judge Upton, having tried the case below, took no part in the decision here.